444 S.E.2d 47

STATE of West Virginia ex rel. Eustace BROWN, Derek Johnson, Vincent Nelson and Donnie Smalls, Relators Below, Appellees,

v.

Jerry DIETRICK, Administrator, Eastern Regional Jail, and The Honorable Gail Boober, Jefferson County Magistrate, Respondents Below,

The Honorable Gail Boober, Jefferson County Magistrate, Appellant.

No. 21904.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 1994.

Decided April 20, 1994.

172

Deborah A. Lawson, Jerome J. Dambro, Martinsburg, for appellee Eustace Brown.

Steven M. Askin, Askin, Burke & Schultz, Martinsburg, for appellee Vincent Nelson.

John M. Hedges, Charleston, for appellant Gail Boober, Jefferson County Magistrate.

James B. Rich, Martinsburg, for appellee Derek Johnson.

David A. Camilletti, Shepherdstown, for appellee Donnie Smalls.

MILLER, Justice:

In this appeal from a habeas corpus proceeding, we consider whether the Circuit Court of Jefferson County[1] was correct in holding that a search warrant issued by a magistrate was void because the magistrate was married to the chief of police and one of his officers had procured the warrant.

■ The lower court determined that because the magistrate was married to the chief of police there was a violation of Canon 3C(1) and 3C(1)(d) of the Judicial Code of Ethics.[2] The former provision requires the recusal of a judge if his impartiality might reasonably be questioned; the latter requires disqualification where the judge's spouse has an interest in the proceeding.[3] We have not had occasion to consider this particular question.

Initially, we note that independent of the Judicial Code of Ethics, the United States Supreme Court has interpreted the Fourth Amendment to the United States Constitution[4] to require that a search warrant be issued by a "neutral and detached magistrate." See *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948). In *Shadwick v. City of Tampa*, 407 U.S. 345, 350, 92 S.Ct. 2119, 2123, 32 L.Ed.2d 783, 789 (1972), the Supreme Court held that the office of magistrate, in order to satisfy the neutral and detached standard "require[s] severance and disengagement from activities of law enforcement." By way of illustration, the Supreme Court in *Shadwick* pointed to its earlier case of *Coolidge v. New Hampshire*, 403 U.S. 443, 450, 91 S.Ct. 2022, 2029, 29 L.Ed.2d 564, 573 (1971), where it voided a search warrant issued by the state's attorney general because he "'was actively in charge of the investigation and later was to be chief prosecutor at trial.'" 407 U.S. at 350, 92 S.Ct. at 2123, 32 L.Ed.2d at 788.[5] Similarly, in *LO–JI Sales, Inc. v.*

---

1. The Honorable C. Reeves Taylor of the Twenty-First Judicial Circuit was assigned to hear this matter.

2. The parties agree that the Judicial Code of Ethics is applicable to magistrates. *See* Canon 7, Compliance with the Judicial Code of Ethics.

3. The applicable provisions in 1992 of the Judicial Code of Ethics, which were in effect at the time the warrant was issued, were in Canon 3C(1) and 3C(1)(d):

   "C. Disqualification
   "(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

   *   *   *

   "(d) he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
     (i) is a party to the proceeding, or an officer, director, or trustee of a party;
     (ii) is acting as a lawyer in the proceeding;
     (iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
     (iv) is to the judge's knowledge likely to be a material witness in the proceeding[.]"

Similar provisions now are found in Canon 3E(1)(c) and 3E(1)(d) of the Code of Judicial Conduct, which became effective January 1, 1993.

4. The Fourth Amendment to the United States Constitution states:

   "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

A similar provision is found in Section 6 of Article III of the West Virginia Constitution:

   "The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized."

5. In *Shadwick*, the Supreme Court emphasized that it used the generic term "'magistrate' to

*New York,* 442 U.S. 319, 327, 99 S.Ct. 2319, 2324, 60 L.Ed.2d 920, 929 (1979), the magistrate was found not to be neutral and detached when he "allowed himself to become a member, if not the leader, of the search party which was essentially a police operation." In *Connally v. Georgia,* 429 U.S. 245, 97 S.Ct. 546, 50 L.Ed.2d 444 (1977), the Supreme Court determined that a magistrate who was compensated based on a fee for the warrants issued could not be considered neutral and detached. It relied on its earlier case of *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), which invalidated on due process principles the payment of the village mayor when he acted as a judge from costs collected in criminal cases brought before him in which there was a conviction.[6]

■ We afforded the same protection for a neutral and detached magistrate under our search and seizure constitutional provision in Syllabus Point 2 of *State v. Dudick,* 158 W.Va. 629, 213 S.E.2d 458 (1975):

"The constitutional guarantee under *W.Va. Const.,* Article III, § 6 that no search warrant will issue except on probable cause goes to substance and not to form; therefore, where it is conclusively proved that a magistrate acted as a mere agent of the prosecutorial process and failed to make an independent evaluation of the circumstances surrounding a request for a warrant, the warrant will be held invalid and the search will be held illegal."

*See also State v. Schofield,* 175 W.Va. 99, 331 S.E.2d 829 (1985); *State v. Wotring,* 167 W.Va. 104, 279 S.E.2d 182 (1981).

■ As the foregoing law indicates, where there is a lack of neutrality and detachment in the issuance of the search warrant, it is void. Aside from the constitutional requirements for a neutral and detached magistrate as to warrants, similar standards are imposed by Canon 3C of the Judicial Code of Ethics relating to the disqualification

of a judge. The Code defines those situations when a judge may be precluded from presiding over a case. The underlying rationale for requiring disqualification is based on principles of due process. As we recognized in *Louk v. Haynes,* 159 W.Va. 482, 499, 223 S.E.2d 780, 791 (1976):

"Due process requires that the appearance of justice be satisfied. The United States Supreme Court has stated:

" 'A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that "[e]very procedure which would offer a *possible temptation* to the average man as a judge ... not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law." *Tumey v. Ohio,* 273 U.S. 510, 532[, 47 S.Ct. 437, 444, 71 L.Ed. 749, 758 (1927) ].' *In Re Murchison,* 349 U.S. 133, 136[, 75 S.Ct. 623, 625, 99 L.Ed. 942, 946] (1955)."

(Emphasis and ellipsis in *Murchison* ).[7]

■ Canon 3C(1) contains an initial general admonition that "[a] judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned[.]" This admonition is followed by a number of specific instances when disqualification is required. Canon 3C(1) also recognizes that the enumerated instances are not to be considered as exclusive as it states that disqualification "includ[es] but [is] not limited to in-

---

denote those who may issue warrants." 407 U.S. at 348, 92 S.Ct. at 2122, 32 L.Ed.2d at 787. We use this term in the same sense.

**6.** We followed *Tumey*'s dictates in *State ex rel. Shrewsbury v. Poteet,* 157 W.Va. 540, 202 S.E.2d 628 (1974), to invalidate fees statutorily authorized to be paid to a justice of the peace in civil

actions. *See also Keith v. Gerber,* 156 W.Va. 787, 197 S.E.2d 310 (1973).

**7.** Even prior to the adoption of the Judicial Code of Ethics, our legislature set out grounds for disqualification of judges in W.Va.Code, 51–2–8 (1923).

stances where: ... [8] *See* Leslie W. Abramson, *Judicial Disqualification Under Canon 3 of the Code of Judicial Conduct* 15–16 (2d ed. 1992).[9]

■ The general standard under Canon 3C(1) to determine whether a judge should be disqualified because the judge's impartiality might reasonably be questioned is analogous to the rule contained in Syllabus Point 14, in part, of *Louk v. Haynes, supra:*

"[W]here a challenge to a judge's impartiality is made for substantial reasons which indicate that the circumstances offer a possible temptation to the average man as a judge not to hold the balance nice, clear and true between the State and the accused, a judge should recuse himself."

*See also State v. Whitt,* 183 W.Va. 286, 395 S.E.2d 530 (1990); *State v. Brown,* 177 W.Va. 633, 355 S.E.2d 614 (1987); Syllabus Point 3, *States v. Hodges,* 172 W.Va. 322, 305 S.E.2d 278 (1983).

In this case, in addition to the general disqualification standard, it is claimed that the more specific disqualification test contained in Canon 3C(1)(d)(iii) applies. This provision requires disqualification if the judge's spouse has "an interest that could be substantially affected by the outcome of the proceeding[.]" [10] This disqualification is claimed to apply if Chief Boober appeared before his wife to seek a warrant. It also is claimed that he would be acting as "a party to the proceeding," and Magistrate Boober would be disqualified under Canon 3C(1)(d)(i). This claim is based on the fact that Chief Boober would have executed the affidavit for the warrant.[11] We have no case law on this point, but we agree with cases from other jurisdictions that support the disqualification.

For example, the Louisiana court in *State v. LaCour,* 493 So.2d 756 (La.Ct.App.1986), set aside a criminal conviction because it found that the judge should have disqualified himself because his son was prosecuting the defendant on another criminal charge in a different county. The Nevada Supreme Court reached the same disqualification conclusion in *Hoff v. Eighth Judicial District Court,* 79 Nev. 108, 378 P.2d 977 (1963), where the judge's son was the prosecuting attorney in the same district. *See also Adams v. State,* 269 Ark. 548, 601 S.W.2d 881 (1980) (prosecutor was the nephew of the judge). *Cf. Black v. State,* 187 So.2d 815 (Miss.1966) (sole prosecuting witness was close relative of judge).[12]

---

**8.** For the text of Canon 3C(1), see note 3, *supra.*

**9.** Professor Abramson states:

"The first section prescribing disqualification is Canon 3C(1), which expresses a general standard for disqualification: 'A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, ...' Courts rely on this general language in cases where the circumstances do not fit the more specific factual settings described in the subsections following Canon 3C(1). Thus, Canon 3C(1) serves as a 'catch-all' provision for analysis of alleged disqualifying judicial conduct. The question of disqualification focuses on whether an objective assessment of the judge's conduct produces a reasonable question about impartiality, not on the judge's subjective perception of the ability to act fairly. The objective standard appears to require disqualification not only when there is in fact impropriety, but also when there is an appearance of impropriety. Indeed, it has been stated that avoiding the latter is 'as important to developing public confidence in the judiciary as avoiding impropriety itself.' The appearance of impropriety may 'sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties.' " *Supra,* at 15–16. (Footnotes omitted).

**10.** Note 3, *supra,* contains the entire text of Canon 3C(1)(d)(iii). The provision covers not only a spouse, but any "person within the third degree of relationship to either of them, or the spouse of such a person[.]" Under Canon 3C(3)(a), "the degree of relationship is calculated according to the civil law system[.]" The official commentary under this section states:

"According to the civil law system, the third degree of relationship test would, for example, disqualify the judge if his or his spouse's father, grandfather, uncle, brother, or niece's husband were a party or lawyer in the proceeding, but would not disqualify him if a cousin were a party or lawyer in the proceeding."

**11.** See Rule 4 of the West Virginia Rules of Criminal Procedure as to the issuance of an arrest warrant and Rule 41 on the issuance of a search warrant.

**12.** We recognize that several jurisdictions have reached a contrary result, but we disagree with

In *Smith v. Beckman*, 683 P.2d 1214 (Colo. Ct.App.1984), the judge's wife was an assistant prosecutor. The record showed that the prosecutor's office had screened her from cases that were before her husband. The court concluded that his disqualification in all criminal cases was warranted because of the appearance of impropriety:

> "Therefore, the possibility that the facts alleged may give rise to the appearance of impropriety must always receive the highest consideration in ruling on a motion for disqualification. *See People v. Botham*, 629 P.2d 589 (Colo.1981). It is of paramount importance that our judges meticulously avoid any appearance of partiality, not only to secure the confidence of litigants before their courts, but to retain public respect." 683 P.2d at 1216.

The critical point in the court's view was the perception of the closeness created by the marital relationship:

> "The circumstances here are such that an appearance of impropriety is created by the close nature of the marriage relationship. A husband and wife generally conduct their personal and financial affairs as a partnership. In addition to living together, a husband and wife are also perceived to share confidences regarding their personal lives and employment situations. Generally, the public views married people as 'a couple,' as 'a partnership,' and as participants in a relationship more intimate than any other kind of relationship between individuals. In our view the existence of a marriage relationship between a

judge and a deputy district attorney in the same county is sufficient to establish grounds for disqualification, even though no other facts call into question the judge's impartiality." 683 P.2d at 1216.

Moreover, in *State v. Holloway*, 66 N.C.App. 491, 311 S.E.2d 707 (1984), the court of appeals held that the defendant had been improperly foreclosed from presenting evidence at the trial court level showing that the search warrant was not issued by a neutral and detached magistrate. This claim was based on the assertion that the magistrate was dating the officer who sought the warrant. The Supreme Court of North Carolina reversed this holding on the basis that the defendant had not filed a proper affidavit to challenge the warrant. *State v. Holloway*, 311 N.C. 573, 319 S.E.2d 261 (1984).[13] Following this decision, the defendant filed a petition for a writ of habeas corpus in the federal district court which awarded the writ to allow the defendant an opportunity to show that the magistrate was not neutral and detached. *Holloway v. Woodard*, 655 F.Supp. 1245 (W.D.N.C.1987).

█ We believe that the foregoing cases and the language in Canon 3C(1) and 3C(1)(d)(i) of the Judicial Code of Ethics relating to the disqualification of a judicial official when his or her impartiality might reasonably be questioned if the official's spouse is a party to the proceeding would foreclose a magistrate from issuing a warrant sought by his or her spouse who is a police officer. However, this situation did not occur here.

---

their reasoning. *See Davis v. State*, 554 So.2d 1094 (Ala.App.1984), *aff'd, Ex Parte Davis*, 554 So.2d 1111 (1989), *cert. denied*, 498 U.S. 1127, 111 S.Ct. 1091, 112 L.Ed.2d 1196 (1991); *State v. Logan*, 236 Kan. 79, 689 P.2d 778 (1984). In *State v. Cottrell*, 45 W.Va. 837, 32 S.E. 162 (1899), we reversed the defendant's conviction holding that a judge was disqualified from trying an indictment signed by him as prosecuting attorney.

**13.** Justice Exum of the North Carolina Supreme Court dissented, with Justice Copeland and Justice Frye joining him. Justice Exum stated, in part:

> "I note, too, that whether a magistrate issuing a search warrant is neutral and detached is an issue more crucial than ever in light of

*United States v. Leon*, [468] U.S. [897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)]. *Leon* holds that evidence seized pursuant to a warrant issued by a 'detached and neutral magistrate but ultimately found to be unsupported by probable cause' is admissible under the Fourth Amendment. Gone is the Fourth Amendment's probable cause requirement insofar as it protects a citizen from being convicted on the basis of evidence seized in its absence pursuant to a warrant. Now under the Fourth Amendment when a warrant is required all that stands between the state's ability to search for and seize evidence and use it in court and the 'right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures' is a 'detached and neutral magistrate.'" 311 N.C. at 579–80, 319 S.E.2d at 265.

The search warrant was issued at the request of Sergeant R.R. Roberts of the Ranson police force. At the hearing below, Magistrate Boober testified that she was the on-call magistrate for emergency matters that might occur after 4:00 p.m. and before 8:00 a.m. the next morning when the magistrate office would be open for normal business.

Magistrate Boober also stated that she was not related to Sergeant Roberts and had no contact with him except through the magistrate system. She also stated that she made an independent review of the affidavit for the search warrant. Her husband's name did not appear on the affidavit nor was there any discussion about her husband with Sergeant Roberts.

■ There was no evidence to show any actual bias or partiality on the part of Magistrate Boober. The entire argument centered on an implied partiality because of the magistrate's relationship to Chief Boober. We indicated earlier that any criminal matters which the magistrate's husband is involved with cannot be brought before her because of their spousal relationship. We decline to extend such a per se rule with regard to the other members of the Ranson police force. The fact that a magistrate's spouse is the chief of police of a small police force does not automatically disqualify the magistrate, who is otherwise neutral and detached, from issuing a warrant sought by another member of such police force. However, a small police force [14] coupled with the chief's active role in a given case may create an appearance of impropriety that would warrant a right to challenge the validity of a search warrant. Certainly, prudence dictates that Magistrate Boober's involvement with warrants from the Ranson police force should be severely curtailed.

■ If such a challenge is made to a warrant, it ordinarily should not be done through a habeas corpus proceeding. Our Rules of Criminal Procedure provide a right to a defendant to challenge the validity of a search warrant in a felony case. However, this challenge may not be made at the preliminary hearing. Rule 5.1(a) of the West Virginia Rules of Criminal Procedure states, in part: "Objections to evidence on the ground that it was acquired by unlawful means are not properly made at the preliminary examination. Motions to suppress must be made to the trial court as provided in Rule 12." Under Rule 12(b) of the West Virginia Rules of Criminal Procedure, such objections are to be made before trial and Rule 12(b)(3) specifically refers to a motion to suppress.[15] At this point, a proper evidentiary hearing can be held before the trial court. The foregoing procedures relate to felony cases where a magistrate conducts the probable cause hearing under Rule 5.1 of the Rules of Criminal Procedure. *Cf. State ex rel. Rowe v. Ferguson*, 165 W.Va. 183, 268 S.E.2d 45 (1980).

■ Where misdemeanors are involved, Rule 5(b) of the West Virginia Rules of Criminal Procedure comes into play.[16] It refers to W.Va.Code, 50–5–1, *et seq.*, which contains general provisions relating to magistrate courts. Under W.Va.Code, 50–5–1, we

---

**14.** The 1993 *West Virginia Blue Book* at 904 gives the population of the City of Ranson at 2,890. According to the Brief of Appellee, Eustace Brown, there are six other police officers in addition to the Chief of Police.

**15.** Rule 12(b)(3) of the Rules of Criminal Procedure states:

"(b) *Pretrial Motions.* Any defense, objection or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:

\* \* \*

"(3) Motion to suppress evidence unless the grounds are not ·known to the defendant[.]"

**16.** Rule 5(b) of the Rules of Criminal Procedure provides:

"*Misdemeanor Offense Triable Before a Magistrate.* If the charge against the defendant is an offense triable by a magistrate, unless the defendant waives his right to a trial on the merits, the magistrate shall proceed in accordance with rules of procedure for magistrates as provided in Chapter 50, Article 5, of the West Virginia Code of 1931, as amended."

are authorized to adopt procedural rules. This authorization is recognized in Section 3 of Article VIII of the West Virginia Constitution.[17] Rule 12(a) of the Rules of Criminal Procedure for Magistrate Courts of West Virginia provides for the filing of pretrial motions which would include motions to suppress evidence.[18] If a search warrant issued by the magistrate is attacked on an impartiality basis, then under Rule 12(a)(1), a motion to transfer the case to another magistrate could be made and should be granted.[19] *See State v. Walters,* 186 W.Va. 169, 170 n. 1, 411 S.E.2d 688, 689 n. 1 (1991). Thus, in a misdemeanor case, a defendant may attack the validity of a search warrant through a motion under Rule 12 of the Rules of Criminal Procedure for Magistrate Courts.

■ Finally, we are asked to extend the rule of necessity to allow Magistrate Boober to handle warrants when she is the on-call magistrate. The rule of necessity is an exception to the disqualification of a judge. It allows a judge who is otherwise disqualified to handle the case to preside if there is no provision that allows another judge to hear the matter. This rule of necessity is summarized in 46 Am.Jur.2d *Judges* § 89 (1969):

"The majority view is that the rule of disqualification must yield to the demands of necessity, and a judge or an officer exercising judicial functions may act in a proceeding wherein he is disqualified by interest, relationship, or the like, if his jurisdiction is exclusive and there is no legal provision for calling in a substitute, so that his refusal to act would destroy the only tribunal in which relief could be had

and thus prevent a determination of the proceeding." (Footnote omitted).

*See also Olson v. Cory,* 27 Cal.3d 532, 178 Cal.Rptr. 568, 636 P.2d 532 (1980); *Eismann v. Miller,* 101 Idaho 692, 619 P.2d 1145 (1980); *Schwab v. Ariyoshi,* 57 Haw. 348, 555 P.2d 1329 (1976).

■ The rule of necessity is an exception to the general rule precluding a disqualified judge from hearing a matter. Therefore, it is strictly construed and applied only when there is no other person having jurisdiction to handle the matter that can be brought in to hear it, as stated in 46 Am.Jur.2d *Judges* § 90 (1969):

"The application of the rule permitting a disqualified judge to act where no other judge is available can be justified only by strict and imperious necessity, since the rule is an exception to the greater rule of disqualification resting on sound public policy. Under the doctrine, a disqualified judge may sit where no decision is possible if he does not sit, as in the case of an appellate court where there is no method provided by constitution or statute to have another person sit as judge of the court if a member is disqualified." (Footnotes omitted).

*See also City of Huntsville v. Biles,* 489 So.2d 509, 514–15 (Ala.1985); 48A C.J.S. *Judges* § 100 (1981).

In this case, Magistrate Boober sought to invoke the rule on the basis that one of the other magistrates was out of town and the third magistrate had a policy of refusing to come out when not on regular on-call duty. Acknowledgement is made that a circuit judge has jurisdiction to issue warrants un-

---

17. Section 3 of Article VIII of the West Virginia Constitution, in pertinent part, states: "The [supreme] court shall have power to promulgate rules for all cases and proceedings, civil and criminal, for all of the courts of the State relating to writs, warrants, process practice and procedure, which shall have the force and effect of law."

18. Rule 12(a) of the Rules of Criminal Procedure for Magistrate Courts, in pertinent part, states: "All other pretrial motions may be made at any time in writing prior to trial, or may be made orally or in writing at time of trial."

19. Rule 12(a)(1) of the Rules of Criminal Procedure for Magistrate Courts states:

"*Time Periods.* Unless good cause is shown as to why such requirements should be excused, the following motions and requests, if made, shall be made in writing and shall be filed with the court and served upon all parties not less than 7 days before the first date scheduled for trial:

"(1) Motion for transfer to another magistrate[.]"

der W.Va.Code, 62–1–10.[20] However, no attempt was made to contact the circuit judge.

In our prior cases, we basically addressed the rule of necessity in regard to cases involving this Court. For example, in *State ex rel. Brotherton v. Blankenship,* 157 W.Va. 100, 207 S.E.2d 421 (1973), we dealt with the governor's alteration of the State budget, some of which involved this Court's budget. The opinion is unclear as to whether a motion to disqualify was actually filed, but we discussed the matter and came to this conclusion in Syllabus Point 1:

> "Even though the members of this Court have an interest in the outcome of a case pending before them, where such interest is remote and indirect they are not disqualified to hear the case and shall proceed to a final decision therein and *this is especially so as a matter of necessity since the law has made no provision for another tribunal or for a substitution of judges to hear and decide the controversy.*" (Emphasis added).

*Brotherton, supra,* was decided before the 1974 Judicial Reorganization Amendment. It does allow substitution for disqualified judges at the circuit court and magistrate levels under Section 3 of Article VIII of the West Virginia Constitution.[21] Moreover, under Section 8 of Article VIII, a retired justice or judge may be recalled to this Court in the event a justice is disqualified.[22] In *State ex rel. Bagley v. Blankenship,* 161 W.Va. 630, 246 S.E.2d 99 (1978), which involved a controversy over this Court's budgetary powers, members of this Court did recuse themselves and appoint a special panel of retired judges to hear the matter.

Finally, in *Wagoner v. Gainer,* 167 W.Va. 139, 279 S.E.2d 636 (1981), we considered the validity of legislation involving the judicial retirement system. We found that all judges, active and retired, had an interest in the case such that our ability to appoint a special panel would not alleviate the situation. We, therefore, utilized the rule of necessity and decided the case.

We are not cited nor have we found a case that is analogous to the case at hand where the rule of necessity has been authorized. As earlier discussed, the rule of necessity should be used only sparingly to circumvent a disqualification. We would not sanction the use of the rule were it to be offered if Chief Boober appeared seeking the search warrant. In the case of the other police officers from Ranson, we decline to utilize the rule simply because we do not find that Magistrate Boober is automatically barred from issuing warrants at their request. There may be circumstances that can be shown that would cast a shadow over the magistrate's impartiality. In that event, a motion to suppress the evidence obtained under the warrant may be made, and the issue will be resolved at a hearing.

For the foregoing reasons, we reverse the judgment of the Circuit Court of Jefferson County which suppressed the evidence obtained under the search warrant. The matter is remanded for a further hearing with regard to the warrant if the relators below desire to challenge it on the basis that there are additional facts, other than her marriage

---

**20.** W.Va.Code, 62–1–10, states:

> "A judge of a court having jurisdiction to try criminal offenses shall have the same power to issue warrants as conferred upon a justice of the peace [magistrate] by this article. A mayor or judge of a police court acting in the capacity of a justice of the peace [magistrate] shall have all the powers and duties conferred upon a justice [magistrate] by this article."

**21.** The applicable portion of Section 3 of Article VIII is:

> "The court shall have general supervisory control over all intermediate appellate courts,

circuit courts and magistrate courts. The chief justice shall be the administrative head of all the courts. He may assign a judge from one intermediate appellate court to another, from one circuit court to another, or from one magistrate court to another, for temporary service."

**22.** Section 8 of Article VIII states, in relative part: "A retired justice or judge may, with his permission and with the approval of the supreme court of appeals, be recalled by the chief justice of the supreme court of appeals for temporary assignment as a justice of the supreme court of appeals[.]"

to Chief Boober, that demonstrate Magistrate Boober was not neutral and detached.

Reversed and Remanded.