**Thomas KATRUSKA, Petitioner,**

v.

**DEPARTMENT OF EDUCATION,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 1999.

Decided March 11, 1999.

John H. Rushford, Pittsburgh, for petitioner.

Matthew M. Hoffman, Pittsburgh, for respondent.

Before PELLEGRINI, J., KELLEY, J., and JIULIANTE, Senior Judge.

PELLEGRINI, Judge.

Thomas Katruska (Katruska) appeals from an order of the Secretary of Education (Secretary) affirming the decision of the Board of School Directors (Board) of the Bethlehem–Center School District (School District) demoting him from high school principal to classroom teacher pursuant to the Public School Code of 1949 (School Code).[1]

Beginning with the 1992–93 school year, Katruska was a professional tenured employee of the School District working as the high school principal. As high school principal, Katruska received satisfactory performance evaluations for the 1992–93, 1993–94 and 1994–95 school years; however, each evaluation noted areas of concern that required him to take remedial and/or corrective action for the following school year. On June 18, 1996, Katruska received an unsatisfactory rating for the 1995–96 school year, which delineated several areas of deficiency[2] and required improvement for the 1996–97 school year. He was also provided with a plan of assistance for improving his performance. On July 22, 1996, at a public meeting before the Board, the Superintendent of the School District, Dr. Thomas A. Knight (Dr. Knight), recommended that Katruska be demoted[3] to a teaching position effective July 31, 1996. The Board accepted Dr. Knight's recommen-

---

1. Act of March 10, 1949, P.L. 30, *as amended by* the Act of August 8, 1963, P.L. 564, 24 P.S. §§ 1–101–27–2702.

2. Katruska's evaluation for the 1995–96 school year generally outlined his deficiencies as:

   · failure to maintain good working relationship with clerical and teaching staff;
   · failure to provide adequate direction to staff and educational atmosphere consistent with instructional goals;
   · failure to act professionally towards staff;
   · failure to demonstrate willingness to cooperate towards accomplishing goals of the School District; and
   · failure to satisfactorily administer the building's instructional or managerial goals.

3. "Demotion" under the School Code constitutes the reassignment to a position with less authori-

ty, prestige or salary, *Filoon v. Middle Bucks Area Vocational–Technical School*, 160 Pa.Cmwlth. 124, 634 A.2d 726 (1993), *petition for allowance of appeal denied*, 539 Pa. 658, 651 A.2d 544 (1994); *Harris v. School District of Philadelphia*, 155 Pa.Cmwlth. 169, 624 A.2d 784 (1993), *petition for allowance of appeal denied*, 538 Pa. 616, 645 A.2d 1319 (1994), and the professional employee has the burden of proving that he or she suffered a demotion as defined in the School Code. *Ahern v. Chester–Upland School District*, 136 Pa.Cmwlth. 251, 582 A.2d 741 (1990), *petition for allowance of appeal denied*, 528 Pa. 632, 598 A.2d 285 (1991).

   The reasons offered by the School District for recommending Katruska's demotion were categorized into four areas of concern: (1) unprofessional behavior/poor working relationships; (2) lack of educational leadership; (3) failure to enforce School District policy; and (4) failure to foster an environment conducive to learning.

dation by a vote of seven in favor to zero opposed. Mr. Bartolomucci, who was also a member of the Board and whose wife, Marge Bartolomucci (Mrs. Bartolomucci), worked at the School District's high school under Katruska's direction, voted in favor of Dr. Knight's recommendation. Katruska was notified of the recommendation for demotion and upon his request hearings were held before the Board.[4]

At the hearing, the School District presented the testimony of Garrette Lee Edmonds (Edmonds), director of secondary education and federal programs. Edmonds testified that as Katruska's immediate supervisor, he was able to observe his performance as high school principal. He further testified that when it came to new programs, principals were expected to educate themselves about the new programs, prepare the staff for implementation with in-service activities, facilitate and provide resources to the staff and encourage and provide direction to the staff when necessary, as well as monitor their progress. Edmonds stated that building principals were expected to take total ownership for the new programs. As to whether Katruska met these expectations, Edmonds indicated that despite being the instructional leader for the high school, Katruska's completion of tasks was not consistent with the middle or elementary school principals and that he displayed a general lack of knowledge on certain programs that the School District tried to implement. He stated that Katruska oftentimes demonstrated a lack of planning. Edmonds indicated that he expressed to Katruska his availability to support and facilitate his needs, but that Katruska failed to take advantage of this assistance or did so half-heartedly. He testi-

fied that Katruska did not meet the outlined expectations and required more central office intervention as opposed to the elementary and middle school principals.[5]

With regard to Katruska's working relationship with his staff, Edmonds testified that over the years, he had received complaints from the high school staff because Katruska lacked clarity and did not provide them with direction on instructional matters needed in order to carry out their responsibilities. He stated that he was able to confirm these complaints by observing Katruska during faculty meetings. Edmonds indicated that Katruska needed to take a "leadership role" in his working relationship with his staff and to accept ownership for events occurring at the high school.

As to the level of leadership in the high school building, Edmonds testified that, "Katruska's philosophy of operating is operating from behind a desk, being in his office," which demonstrated to him an unwillingness to be confrontational with the staff to bring about a desired outcome or to establish standards and practices in the high school building. He further testified that Katruska's management skills were inadequate in that, "[t]here was a general air of permissiveness" because he failed to set standards and expectations for the staff and students, especially in enforcing the Discipline Policy established for the School District. Edmonds stated that when he thought he was not getting through to Katruska on these issues, he would have to ask Dr. Knight to intervene and make sure that Katruska knew what was expected of him. He indicated that he had to intervene between Katruska and several staff members who felt that he was not respecting

---

4. Section 1151 of the School Code, 24 P.S. § 11–1151, governs proceedings involving the demotion of a professional employee. That section provides in pertinent part:

    [T]here shall be no demotion of any professional employe either in salary or in type of position, except as otherwise provided in this act, without the consent of the employe, or, if such consent is not received, then such demotion shall be subject to the right to a hearing before the board of school directors and an appeal in the same manner as hereinbefore provided in the case of the dismissal of a professional employe.

5. With regard to several projects—graduation requirements, establishment of graduation standards, developments of guidelines for senior projects, development of a community service activity, development of student portfolio system, and the establishment of a procedure to implement student exit interviews—Edmonds testified that Katruska did not display an acceptable level of effort or commitment towards accomplishing these goals and did not demonstrate an acceptable level of initiative, educational or instructional leadership.

them. Edmonds concluded that Katruska was not performing his duties in a satisfactory manner and it was not in the best interest of the School District to have him remain the high school principal.[6]

The School District also presented the testimony of Dr. Knight who testified that as superintendent, he was required to issue performance ratings of Katruska based upon his personal observations and supervision. He stated that as early as the 1993–94 school year, several members of the staff apprised him of their concerns relative to working with Katruska,[7] and that he directed him to take the necessary corrective action to improve the situation. Dr. Knight further stated that Katruska's managerial style needed correction; however, even after being given those directives, Katruska's behavior recurred at the end of the 1994–95 school year and remained unchanged for the 1995–96 school year.

Dr. Knight testified that as a result of the dissatisfaction with Katruska's performance, a meeting was held with him before the Board of Education to express his concerns. He stated that as a result of that meeting, Katruska was directed to become more accessible to all staff members, be sensitive and responsive to their needs when they approached him with concerns and respond to those concerns in a professional manner, and

make sure he understood the message that was being communicated to him. Dr. Knight indicated that these directives were the same as those that had been issued to him in the past. He testified that for Katruska, the 1995–96 school year was a movement towards improvement in leadership, communication and innovation, but it was evident that those items which he liked he spent more effort and devotion on, leaving those he did not like to the wayside, and by June 1996, Katruska still had not satisfactorily modified his behavior. Dr. Knight stated that based upon his belief that Katruska did not satisfactorily display the necessary qualities needed for a principal, it was his recommendation that Katruska be demoted to classroom teacher in order to remediate the problems existing in the high school under his leadership.[8]

Katruska chose not to present any evidence or testify on his own behalf during the proceedings before the Board. However, when the School District presented the testimony of Mrs. Bartolomucci,[9] Katruska objected asserting that there was a possibility of bias because her husband was a Board member who would participate in the deliberations and ultimately vote in his case. In response, the Board decided to delay its decision on Katruska's objection until it made its final adjudication.[10]

6. Edmonds testified that if Katruska was demoted, he would become the new high school principal.

7. Those employees were Mrs. Bartolomucci, Mrs. Package and Mrs. Yuratovich. Dr. Knight testified that all three employees generally stated that they could not approach or talk to Katruska, and that their preference for dealing with him was to avoid him because they felt afraid to ask him questions and he had a habit of "snapping" at them. He also stated that they complained that Katruska cursed in their presence and acted in others ways which they found objectionable.

8. The School District also presented the testimony of Mrs. Bartolomucci, secretary/clerical support and attendance officer for the senior high school; Patricia Package, high school secretary; Judith R. Queen, secretary/clerical support for the senior high school; Deborah Ann Sabol, high school guidance counselor; Janet Lane, senior high school English teacher; and Amalia Yuratovich, senior high school English teacher. Each of these witnesses testified about their general working relationship with Katruska.

9. Mrs. Bartolomucci testified that she was responsible for attendance and in-school suspension for the entire period that Katruska was principal of the senior high school. In general, she stated that Katruska failed to provide her with any direction or supervision in relation to carrying out her duties, and that when problems with students did occur, he did not assist her but told her to handle the matters herself. Mrs. Bartolomucci indicated that there was not any interaction or rapport between them, and that oftentimes, Katruska, "had an arrogant air about him in his mannerisms, so he got across to you what I observed; he didn't want to be bothered; he didn't want to hear it." She further indicated that he treated certain teachers and a maintenance supervisor more favorably or personably than other staff members. Mrs. Bartolomucci did acknowledge that her husband was a member of the Board.

10. The Board did not address this issue in its final adjudication.

At the close of testimony, the Board directed Katruska and the School District to submit proposed findings of fact and conclusions of law. On August 25, 1997, the Board ultimately adopted the School District's proposed findings of fact and conclusions of law and approved the resolution recommending Katruska's demotion by a vote of six in favor to two opposed;[11] Board member Bartolomucci's vote was among those in favor of the demotion. Katruska petitioned for *de novo* review by the Secretary, and, without taking any additional evidence, the Secretary affirmed the Board's decision.[12] With respect to Katruska's assertion that his due process rights were violated when Board member Bartolomucci was allowed to deliberate and vote on his demotion when Mrs. Bartolomucci had testified as a witness against him during the proceedings, the Secretary stated:

While [Mr. Bartolomucci's] participation may have been imprudent, it cannot by [sic] found to have contravened section 1129 [of the School Code]. The District's administration sought the demotion of Katruska as a result of a number of concerns[.] While it is true that [Mrs. Bartolomucci] offered testimony on several of the concerns, she cannot be said to have *instituted* the complaint. Thus, the proscription of section 1129 is not apposite in the instant case. Further, neither disregarding her testimony nor eliminating [Mr. Bartolomucci's] vote would alter the outcome of this case. With respect to the testimony, no single finding of fact relied solely on the disputed testimony. Moreover, the Board voted in this case 7 to 0 to affirm the demotion. Even if the vote of

[Mr. Bartolomucci] was disregarded, the remaining votes would satisfy the requirements of section 1129. Finally, while its is troubling that [Mr. Bartolomucci] did not make every attempt to avoid even the appearance of impropriety by recusing himself, we agree with the [School] District that the Secretary's *de novo* review in this proceeding cures any potential for bias. (Emphasis in original).

This appeal by Katruska followed.[13]

The core issue in this appeal is whether Mrs. Bartolomucci's testimony concerning Katruska disqualified her husband, Board member Bartolomucci, from voting on Katruska's demotion. Katruska contends that Board member Bartolomucci was disqualified on both statutory and constitutional grounds.

As to the statutory grounds, Katruska asserts that Board member Bartolomucci's participation in the vote violated Section 1129 of the School Code, 24 P.S. § 11–1129, which provides in relevant part:

After fully hearing the charges or complaints and hearing all witnesses produced by the board and the person against whom the charges are pending, and after full, impartial and *unbiased* consideration thereof, the board of school directors shall by two-thirds vote of all the members thereof ... determine whether such charges or complaints have been sustained and whether the evidence substantiates such charges and complaints, and if so determined shall discharge such professional employe.

*No member of any board of school directors shall vote on any roll call if he is*

11. The Board is composed of nine members: Mr. Bair; Mr. Bartolomucci; Mr. Behm; Mrs. Marcolini; Mr. Rhodes; Ms. Ross; Mr. Rupnik; Mr. Sloan; and Mr. Yakopovich. Mr. Behm was absent for this vote.

12. In cases involving the demotion of a professional employee under the School Code, the Secretary is the ultimate finder of fact, *Kaczmarcik v. Carbondale Area School District*, 155 Pa.Cmwlth. 294, 625 A.2d 126, *petition for allowance of appeal denied*, 536 Pa. 633, 637 A.2d 293 (1993), and is vested with the authority to conduct *de novo* review whether he takes additional testimony or merely reviews the official record of the proceedings conducted before the Board. *Belas-*

*co v. School District of Pittsburgh*, 510 Pa. 504, 510 A.2d 337 (1986).

13. This Court's scope of review of a decision by the Secretary is limited to a determination of whether the Secretary's findings are supported by substantial evidence, whether errors of law were committed or whether the constitutional rights of the professional employee were violated. *Stroudsburg Area School District v. Kelly*, 701 A.2d 1000 (Pa.Cmwlth.1997), *petition for allowance of appeal denied*, 553 Pa. 710, 719 A.2d 748 (1998). The appropriate standard by which to measure a demotion is to question whether the decision was made in an arbitrary or discriminatory manner. *Harris, supra.*

*related as ... husband ... to the professional employe involved or to any of the parties instituting the complaint.* (Emphasis added).

The issue then becomes whether Mrs. Bartolomucci "instituted" the complaint against Katruska within the meaning of this provision.

Dr. Knight testified that several members of the senior high school staff complained to him about their working relationship with Katruska, including Mrs. Bartolomucci. However, Dr. Knight stated that based upon his personal observations and direct supervision of Katruska, as well as information received from Edmonds, he decided to recommend Katruska's demotion. Although Mrs. Bartolomucci presented her concerns to Dr. Knight, her complaints were not the same as instituting the complaint, i.e., recommending the demotion against Katruska. Because Mrs. Bartolomucci did not institute the complaint against Katruska, Board member Bartolomucci, for that reason, was not precluded by Section 1129 of the School Code from voting on the recommendation for his demotion.

Even if Board member Bartolomucci was *not* precluded by Section 1129 of the School Code from voting on his demotion, Katruska contends that basic due process demanded that he recuse himself from the proceedings. When an administrative agency carries out its functions that will impact the rights of an individual, it must provide the appropriate due process protections. *Lyness v. State Board of Medicine,* 529 Pa. 535, 605 A.2d 1204 (1992). Due process requires that the finder of fact "not only be unbiased but must avoid even the appearance of bias." *Prin v. Council of the Municipality of Monroeville,* 165 Pa.Cmwlth. 519, 645 A.2d 450, 452 (1994); *see also In Interest of McFall,* 533 Pa. 24, 617 A.2d 707 (1992); *Horn v. Township of Hilltown,* 461 Pa. 745, 337 A.2d 858 (1975). Whether or not there is actual bias is inconsequential because it is the potential for bias and the appearance of non-objectivity that are sufficient to create a denial of due process. *Lyness; see also Gardner v. Repasky,* 434 Pa. 126, 252 A.2d 704 (1969).

Although there is no evidence that Board member Bartolomucci had any actual bias against Katruska, the appearance of bias does exist in this case because of the very nature of the inherent and implied sense of intimacy that exists in the marital relationship between the Bartolomuccis. While we have found no cases concerning an administrative agency in this context, courts have held that the marital relationship is sufficient to disqualify a judge who participates in a case in which his or her spouse is also a participant in the same case. *See West Virginia ex rel. Eustace Brown v. Dietrick,* 191 W.Va. 169, 444 S.E.2d 47 (1994) (magistrate foreclosed from issuing search warrant to spouse who is chief of police); *Holloway v. Hopper,* 852 P.2d 711 (Okla.1993) (judge disqualified because party sought and received legal advice from spouse even though neither judge's wife or her law firm entered appearance in case); *Smith v. Beckman,* 683 P.2d 1214 (Colo.Ct.App.1984) (marriage relationship between judge and deputy district attorney in same county sufficient to establish disqualification even if no facts question judge's impartiality).

The School District counters that even if there is an appearance of bias, it was cured by the Secretary's *de novo* review.[14] However, both factually and legally, *de novo* review would not cure the appearance of bias in this case. Section 1129 of the School Code requires a two-thirds vote of all the members in order to sustain Dr. Knight's recommendation for Katruska's demotion. In this case, there were nine members of the Board and a two-thirds vote would have required at least six votes in favor of demotion. If Board member Bartolomucci's vote was not included, the result would have been a vote of five in favor of demotion to two opposed, and five votes would not have met the two-thirds vote

14. The Secretary concluded that although there was an appearance of impropriety, the outcome of the case would have been the same had Board member Bartolomucci recused himself since the Board voted "7 to 0" to approve Katruska's demotion. Contrary to the Secretary's conclusion, the Board voted "7 to 0" to *recommend* that Katruska be demoted but voted "6 to 2" to *approve* that recommendation.

requirement of Section 1129 of the School Code. If such were the case, the Board would not have demoted Katruska and his case would never have been before the Secretary for review.

In any event, even if the vote were unanimous to demote Katruska, we have held that any post-deprivation proceeding, which may or may not include *de novo* review, is insufficient to cure an earlier procedural due process violation. *Philadelphia Board of License & Inspection Review v. 2600 Lewis, Inc.*, 661 A.2d 20 (Pa.Cmwlth.1995) ("later hearing does not cure prior, defective proceedings"); *Brown v. Pennsylvania Board of Probation & Parole*, 70 Pa.Cmwlth. 597, 453 A.2d 1068 (1982) (Board's *de novo* hearing without inmate's counsel present after inmate requested continuance even though inmate did not request hearing insufficient to cure taint of proceedings of inmate being without representation); *see also Martin v. Nebraska Department of Public Institutions*, 7 Neb.App. 585, 584 N.W.2d 485 (1998) ("post-termination proceedings ... which included de novo review of the case ... although procedurally adequate, did not cure pre-termination violation of ... right to procedural due process"). In such cases, a general remand will be granted regardless of the outcome for due process protections to be carried out pursuant to the proper procedures and to ensure the integrity of the administrative process. *Newtown Township Board of Supervisors v. Greater Media Radio Co.*, 138 Pa.Cmwlth. 157, 587 A.2d 841 (1991); *Roth v. Borough of Verona*, 102 Pa. Cmwlth. 550, 519 A.2d 537 (1986). Therefore, even if the vote had been unanimous, we would still be required to remand this case.

■ Because Board member Bartolomucci's presence during the deliberations and vote on Katruska's demotion created an appearance of bias in these proceedings, Katruska was denied his due process rights, *Lyness*, and the Secretary's *de novo* review was insufficient to restore the integrity of the compromised administrative process. *New-*

---

**15.** Because we have disposed of this case on a procedural question, we do not need to reach or

*town; Roth.* Accordingly, we vacate the order of the Secretary and remand this matter to the Board.[15]

## *O R D E R*

AND NOW, this 11th day of March, 1999, the order of the Secretary of Education at Teacher Tenure Appeal No. 4–97, dated June 15, 1998, is vacated and remanded to the Board of School Directors.

Jurisdiction relinquished.

decide the merits of Katruska's claims.