305 S.E.2d 278

**STATE of West Virginia**

v.

**Gary Lee HODGES.**

**No. 15622.**

Supreme Court of Appeals of West Virginia.

June 29, 1983.

**324**

Michael E. Froble, Asst. Atty. Gen., Charleston, for appellee.

James M. Cagle, Charleston, for appellant.

McHUGH, Justice:

Appellant, Gary Lee Hodges, appeals from a January 14, 1982 final order of the Circuit Court of Wayne County denying his motion to set aside the verdict and grant a new trial. Hodges was convicted of carrying a dangerous and deadly weapon without a license, in violation of *W. Va. Code*, 61-7-1 [1975], and sentenced to twelve months imprisonment in the county jail. For reasons discussed herein, we reverse and remand.

On June 8, 1981, Hodges was stopped for speeding and passing illegally by Wayne County Sheriff Billy Joe Wellman. Wellman had heard a rumor in the sheriff's department that Hodges carried a gun, but could not recall from whom he had heard this. After he was stopped by Sheriff Wellman, Hodges got out of his car, walked to the sheriff's car, and signed the tickets which Wellman had written, and then turned away from Wellman to return to his vehicle. Wellman noticed the impression of a pistol in Hodges' rear pocket as he walked away. He stopped Hodges, obtained the pistol, and arrested Hodges for carrying a dangerous weapon without a license.

Between Hodges' arrest and December 15, 1981, the date set for trial in the Circuit Court of Wayne County, discussions were had by Hodges' counsel, the assistant prosecuting attorney assigned to this case, and the trial judge regarding a possible plea bargain. The defendant indicated his willingness to plead guilty in return for assurances that no jail sentence would be requested by the State or imposed by the court. It appears that defense counsel discussed this matter with the assistant prosecutor, who, in turn, discussed it with the judge. The substance of the prosecutor's conversation with the judge is not entirely clear but the assistant prosecutor relied upon it in telling defense counsel that an agreement had been reached which met with the judge's approval. The judge recalled telling the assistant prosecutor that he was not interested in seeing Hodges go to jail. The judge indicated that he intended to levy a substantial fine. Defense counsel was satisfied that an agreement had been reached and that his services would not be necessary on the day the case was called for trial.

Hodges appeared, without counsel, before the court on December 15, 1981. At some point in the proceedings he became aware that the court intended to impose a suspended sentence of one year in the county jail. Hodges requested that the proceedings be continued until the following day to allow counsel to be present, as he felt that the plea bargain agreement had been violated by the court's decision to impose a suspended sentence. The court acceded to this request and on December 16, 1981, defense counsel appeared before the court with Hodges. Various pretrial

motions were made at that time, including a motion to recuse the judge and a motion for a continuance, both of which were denied. The case proceeded to trial before a jury on the afternoon of December 16, and concluded the same day.

The State presented a single witness, Sheriff Wellman. The trial court denied Hodges' motion at the close of Wellman's testimony to direct a verdict in his favor due to the State's failure to establish Hodges' lack of a license to carry the pistol. The defendant did not testify and the defense called no witnesses. The jury returned a verdict of guilty.

At the January 11, 1982 hearing on Hodges' post-trial motions the judge and defense counsel discussed the fact that, unknown to defense counsel at the time, the jury panel from which the jury for Hodges' trial was selected had given a Christmas gift to the chief deputy of Sheriff Wellman, who was serving as the court's bailiff. Defense counsel first became aware of the gift after jury selection when the jury was impaneled to try the case. The first objection to the gift was raised at the hearing on the post-trial motions.

Appellant makes six assignments of error. The trial judge's failure to enforce the plea bargain agreement or to grant a continuance are assigned. Hodges also contends that the trial judge's failure to recuse himself was error, as was the judge's failure to fully and timely inform him of the gift given by the jury panel to Wellman's chief deputy. The court's ruling allowing the introduction of the pistol and bullets, allegedly obtained as a result of an illegal search, is also cited as error. Finally, Hodges contends that the State failed to establish, *prima facie*, that he did not possess a license to carry the pistol removed from him by Sheriff Wellman.

We conclude that the court's failure to grant a continuance in the circumstances presented herein constituted an abuse of discretion. We also conclude that the State, while introducing some evidence regarding the lack of a license, basically relied upon *State v. Merico*, 77 W.Va. 314, 87 S.E. 370 (1913) which held that the State had no burden to prove the absence of a license. For reasons set forth below the State's reliance on *Merico* was inappropriate. These two errors require reversal. While the remaining assignments warrant discussion, none would require reversal of Hodges' conviction.

I

We first turn to the plea bargain agreement. The trial court believed that he had, at most, indicated his inclination not to jail Hodges, should Hodges choose to plead guilty. It was the court's view that no binding agreement had been struck. Hodges certainly interpreted the court's representation in a different manner. When the court stated that he had no interest in seeing Hodges go to jail, but would levy a substantial fine, Hodges contemplated no suspended jail sentence. It is apparent from Prosecuting Attorney Robert Chafin's testimony that he had not contemplated the imposition of a suspended sentence. All participants concede that there was no mention of the imposition of a suspended sentence before the December 15 date set for trial.

█ Our first inquiry must be whether the agreement bound the trial judge not to impose a suspended sentence. This Court has written extensively on the standards for the effectiveness of plea bargain agreements. *See e.g., State v. Wayne*, 162 W.Va. 41, 245 S.E.2d 838 (1978); *State ex rel. Gray v. McClure*, 161 W.Va. 488, 242 S.E.2d 704 (1978); and, *Brooks v. Narick*, 161 W.Va. 415, 243 S.E.2d 841 (1978). Our cases have consistently held that in order to bind the State to its bargain a defendant must have acted to his substantial detriment. As we stated in syllabus point 1 of *State v. Wayne*, "[s]pecific performance of a plea bargain is an available remedy only when the party seeking it demonstrates that he has relied on the agreement to his detriment and cannot be restored to the position he held before the agreement." The only detriment suffered was Hodges' failure to subpoena a witness in reliance on the supposed agreement. Hodges could

have very easily been restored to the position he held before the bargain had the trial court but granted his request for continuance. We conclude that Hodges was not entitled to specific performance of any plea bargain which may have been reached.

█ It is equally clear, however, that, where representations by the court reasonably lead the defendant to believe that no suspended jail sentence shall be imposed and the trial judge indicates for the first time at the trial date that he intends to impose such a sentence, a continuance should be granted. In syllabus point 1 of *State v. Cunningham*, 170 W.Va. 119, 290 S.E.2d 256 (1981) we spoke of the trial court's discretion in granting continuances, *quoting* syllabus point 1 of *State v. Jones*, 84 W.Va. 85, 99 S.E. 271 (1919) (in part):

> "The granting of a continuance is a matter within the sound discretion of the trial court ... and the refusal thereof is not ground for reversal unless it is made to appear that the Court abused its discretion, in that its refusal has worked injury and prejudice to the rights of the party in whose behalf the motion was made."

The failure to grant a continuance clearly prejudiced Hodges. He failed to subpoena a witness and, as a consequence, presented no evidence in defense. The agreement which Hodges reasonably believed had been reached failed to materialize. In these circumstances, it was an abuse of the court's discretion to deny a continuance.

## II

█ Hodges contends that the trial judge's failure to recuse himself was error. Hodges points out that in a divorce action in which he was a party the judge voluntarily recused himself because he had known both parties since childhood. The trial judge also recused himself from proceedings involving both the Wayne County Bank, in which the judge's family held stock, and Hodges. We find no reason presented in the petition and none apparent on the record to lead us to conclude that the court erred in denying a motion to recuse first presented to it on the day of trial. *See*, Trial Court Rules, XVII, subd. A(1) (requiring filing of a motion to disqualify seven days before trial date.) In syllabus point 14 of *Louk v. Haynes*, 159 W.Va. 482, 223 S.E.2d 780 (1976) we stated, in part, "[w]here a challenge to a judge's impartiality is made for substantial reasons which indicate that the circumstances offer a possible temptation as to the average man as a judge not to hold the balance nice, clear and true between the State and the accused, a judge should recuse himself." Finding no substantial reasons tending to impair the trial judge's impartiality, we affirm his decision not to recuse himself.

█ Hodges' contention that he was prejudiced by the jury panel's gift to the bailiff strains credulity and we would not reverse on this ground alone in this case. This is not to say, however, that we approve of what appears from the record to be an established practice in the Circuit Court of Wayne County whereby the jury panel bestows Christmas gifts upon the judge and other court personnel, including the bailiff. We understand the inclination that the jury panel may feel in this regard, but the practice of a jury panel giving gifts to circuit court officials and personnel is disapproved. A defendant in a criminal case must be afforded both the reality and the appearance of an impartial jury. *See*, *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981); *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982). While gift giving may not affect the reality of impartiality it does affect the appearance of impartiality.

## III

█ The search of Hodges' person which produced the pistol and bullets introduced in evidence was proper and constitutionally unobjectionable, as it was incident to a lawful arrest. Hodges was stopped by Sheriff Wellman after Wellman had observed him commit the misdemeanor offenses of speeding and crossing a double yellow line. *W.Va.Code*, 17C–6–1(b)(3) [1951]; 17C–7–1 [1951]; and 17C–18–1 [1951]. The arrest was clearly legal. *See*, *State v. Byers*, 159 W.Va. 596, 224 S.E.2d

726 (1976) (discussing arrests for traffic violations under Chapter 17C). Sheriff Wellman saw the imprint of a pistol in Hodges rear trouser pocket as Hodges walked away from Wellman. As we noted in syllabus point 3 of *State v. Drake,* 170 W.Va. 169, 291 S.E.2d 484 (1982) *quoting* syllabus point 6 of *State v. Moore,* 165 W.Va. 837, 272 S.E.2d 804 (1980): "A warrantless search of the person and the immediate geographic area under his physical control is authorized as an incident to a valid arrest." Hodges' arrest was valid, and the search which produced the gun was proper under the rule established in *Moore,* and quoted above. The admission of the properly obtained weapon was unobjectionable.

IV

Hodges was convicted under *W.Va.Code,* 61–7–1 [1975], which provides, in pertinent part, "[i]f any person, without a state license therefor ... carry about his person any revolver or pistol ... or other dangerous or deadly weapon of like kind or character he shall be guilty of a misdemeanor."

Hodges contends that the State has the burden to prove the absence of a license for the pistol which he was carrying and that the State failed to meet this burden. The issue is whether the State has the burden to prove the absence of a license for the weapon, or whether this is a matter to be raised by the defendant as an affirmative defense.

In *State v. Merico,* 77 W.Va. 314, 87 S.E. 370 (1913) we discussed the burden of proof in this situation:

"While it is necessary for the indictment to allege the want of license, such being an element of the crime, ... still the State is not required to prove it. This is an exception to the general rule requiring the State to prove every material allegation of an indictment, and rests on a presumption that the averment is true, unless proven by the defendant to be untrue. If defendant had a license he knew it, and it was easy for him to prove; whereas, if the rule in such case were otherwise, the state would be required to prove a negative, which is unusual." (citations omitted)

*State v. Merico, supra,* explicitly stated that the absence of a license was an element of the crime described by the language of the West Virginia statute. *W.Va. Code,* 61–7–1.[1] We are, therefore, required to address the allocation of the burden of proof as to an element of the crime described by the statute, as opposed to an exception or exemption to that statute. *Compare, State v. Neary,* 409 A.2d 551 (R.I.1980) (construing R.I.Gen.Laws, 11–47–27 (1969) specifying a license as an exemption to be proved by defendant). Also, 61–7–1 is a penal statute, and must be strictly construed against the State. *See, State v. Ball,* 164 W.Va. 588, 264 S.E.2d

1. Other courts have considered the issue of whether the absence of a license is an element within the contexts of their statutes prohibiting carrying unlicensed weapons. Several states with statutes similar to ours have concluded that *Winship* and *Mullaney* require that the burden to prove the absence of a license be borne by the state. *State v. Beauton,* 170 Conn. 234, 365 A.2d 1105 (1976); *Commonwealth v. McNeil,* 461 Pa. 709, 337 A.2d 840 (1975); *Head v. State,* 235 Ga. 677, 221 S.E.2d 435 (1975); *see generally* Annot. 69 A.L.R.3d 1054 (1976).

The Supreme Court of Georgia in *Head* did not discuss the rationale for its decision regarding the burden of proof. The court may have felt its result was compelled by *Johnson v. Wright,* 509 F.2d 828, 829 (5th Cir.1975), *cert. denied* 423 U.S. 1014, 96 S.Ct. 445, 46 L.Ed.2d 384 (1975). Johnson is one of two federal circuit court cases condemning state holdings placing the burden of proving the absence of a license upon the defendant. *See also United*

*States v. Garcia,* 555 F.2d 708 (9th Cir.1977) (discussing the issue with regard to California state law).

We are aware that there is authority to the contrary, however some of those cases consider statutory language quite different from that contained in *W.Va.Code,* 61–7–1. For instance, Rhode Island and Indiana have statutes which explicitly provide that the absence of a license for a weapon need not be proven by the State, much as *W.Va.Code,* 60A–5–506 [1971] provides that the state need not negative any exception or exemption to the Uniform Controlled Substances Act. *State v. Neary,* 409 A.2d 551 (R.I. 1980) (construing R.I.Gen.Laws § 11–47–27 (1969)); *Elliott v. State,* 435 N.E.2d 302 (Ind. App.1982) (construing Ind.Code 35–23–3.1–19 (1981 supp.)). Other cases are simply not well reasoned as they strain to avoid requiring the state to prove the absence of a license. *See e.g., Lively v. State,* 427 A.2d 882 (Del.1981) and *State v. Paige,* 256 N.W.2d 298 (Minn.1977).

844 (1980) and *Myers v. Murensky*, 162 W.Va. 5, 245 S.E.2d 920 (1980).[2]

Hodges argues that *In Re Winship* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed. 368 (1970) and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) require that the State prove every element of the offense including the absence of a license. This Court has had several opportunities to discuss *Mullaney*. *See State v. Pendry*, 159 W.Va. 738, 227 S.E.2d 210 (1976), *overruled on other grounds, Jones v. Warden, W.V. Penitentiary*, 161 W.Va. 168, 241 S.E.2d 914 (1978); *State v. Gangwer*, 169 W.Va. 177, 286 S.E.2d 389 (1980); *Bowman v. Leverette*, 169 W.Va. 589, 289 S.E.2d 435 (1982).

We set forth the rule governing the application of *Mullaney* in West Virginia in syllabus point 4 of *State v. Pendry, supra*, where we held, in pertinent part: "In a criminal prosecution, the State is required to prove beyond a reasonable doubt every material element of the crime with which the defendant is charged."

*Merico* held that, while an essential element, the burden of proof regarding the presence or absence of a license rests with the defendant. Clearly, under the rule enunciated in *Pendry* and followed by this Court in subsequent cases, the burden may not be shifted to the defendant to negative an element of the offense with which he is charged.

Read together, *Merico* and *Pendry* compel us to hold that the absence of a license is an element of the crime of carrying a dangerous or deadly weapon without a license and the burden of proof as to this element must be borne by the State. To the extent it diverges from this opinion, *State v. Merico*, 77 W.Va. 314, 87 S.E. 370 (1913) is hereby overruled.

We now must fashion a guide for the State in proving its case regarding the absence of a license for a dangerous or deadly weapon. *W.Va.Code*, 61–7–2 [1975] establishes the procedure for obtaining a license to carry a weapon. It also provides:

"The clerk of the circuit court shall, immediately after license is granted as aforesaid, furnish the superintendent of the department of public safety a certified copy of the order of the court granting such license, for which service the clerk shall be paid a fee of $2.00 which shall be taxed as cost in the proceeding. It shall be the duty of the clerk of each circuit court to furnish to the superintendent of the department of public safety, at any time so required, a certified list of all such licenses issued in his county."

Thus, the superintendent of the department of public safety is required to maintain a list of all licenses issued within the State. The State's *prima facie* burden to establish the absence of a license to carry a dangerous or deadly weapon is met if a reasonable search reveals that the superintendent of the department of public safety has no record of a license. The defendant may then go forward with evidence showing that he or she did have a valid license, which, for some reason, the State's search of the records did not reveal, *e.g.*, evidence that he or she obtained the license and that, through inadvertence, the county clerk simply failed to forward this information to the superintendent.

Because of the trial court's failure to grant a continuance, and because of the principle announced herein regarding the burden of proof as to the absence of a license for a dangerous or deadly weapon, this matter is reversed and remanded for proceedings consistent with this opinion.

Reversed and remanded.

HARSHBARGER, J., deeming himself disqualified did not participate in the consideration or decision of this case.

---

2. Statutes may be both penal and remedial. When this is the case, the statute should be strictly construed when the penalty is to be enforced and broadly construed when the remedy is to be achieved. Compare *Ball, supra*, and

*Myers, supra*, with *Morgan v. Mayes*, 170 W.Va. 687, 296 S.E.2d 34 (1982). In civil proceedings the burden to show a valid license is generally upon the defendant. W.Va.R.Civ.P. 8(c).