609 S.E.2d 870

**STATE of West Virginia ex rel. Eric P. MANTZ, M.D., et al., Petitioners**

**v.**

**The Honorable Paul J. ZAKAIB, Jr., Judge of the Circuit Court of Kanawha County, West Virginia; St. Paul Fire and Marine Insurance Company, a Minnesota Corporation; Commercial Insurance Service, Inc., a West Virginia Corporation; Christopher P. Bastien, Gerald R. Lacy, and Susan K. Dirks, Special Masters, Respondents.**

**No. 31856.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 29, 2004.

Decided Nov. 17, 2004.

Dissenting Opinion of Justice McGraw Dec. 2, 2004.

Dissenting Opinion of Justice Starcher Dec. 23, 2004.

---

Richard Neely, Roger Hunter, Neely & Hunter, Charleston, and James A. Wilderotter, Robert H. Klonoff, Gregory A. Castanias, Peter F. Garvin, Jones Day, Washington, DC, for Petitioners.

Michael J. Farrell, Farrell, Farrell, & Farrell, Huntington and Neil J. Dilloff, Piper Rudnick, L.L.P., Baltimore, MD, for Respondent St. Paul Fire & Marine Insurance Co.

MAYNARD, Chief Justice:

This case is before this Court upon a petition for a writ of prohibition filed by Eric P. Mantz, M.D., S. Willis Trammel, M.D., and Todd A. Witsberger, M.D. (hereinafter "petitioners") against the respondents, the Honorable Paul Zakaib, Jr., Judge of the Circuit Court of Kanawha County, St. Paul Fire and Marine Insurance Company (hereinafter "St. Paul"), and Commercial Insurance Services, Inc. (hereinafter "CIS"). Petitioners seek to prohibit the special masters and discovery commissioners (hereinafter "special masters") appointed by Judge Zakaib from presiding over the underlying class action. Petitioners contend that Judge Zakaib erred by denying their motion to disqualify the special masters based upon a conflict of interest.

This Court has before it the petition for a writ of prohibition, the responses thereto, and the argument of counsel. For the reasons set forth below, the writ is granted as moulded.

## I.

### FACTS

The underlying case is a national class action filed on March 22, 2002, on behalf of more than 40,000 doctors concerning St. Paul's non-renewal of their medical malpractice policies.[1] The petitioners herein are the

---

1. The plaintiffs had purchased medical malpractice insurance from St. Paul or its predecessors through its insurance agent, CIS. In the com-

plaint, the plaintiffs alleged that they were led to believe that a benefit of purchasing medical malpractice insurance from St. Paul was the receipt

named representatives of the plaintiffs. On June 4, 2004, Judge Zakaib appointed Christopher P. Bastien, Esquire, and his partners, Gerald R. Lacy, Esquire, and Susan K. Dirks, Esquire, of the law firm Bastien & Lacy, L.C., to serve as special masters in this case. According to the petitioners, while the parties had previously agreed that a special master might be needed to assist the court with certain issues in the case, they were not advised in advance that Mr. Bastien and his partners, or anyone in particular, were being considered by the court as potential special masters.

In the June 4, 2004 order, Judge Zakaib indicated that the special masters would assist the court in determining "the possibility of utilizing subclasses, the law applicable to any subclasses, the law of the various states as it relates to the certified classes, the pending discovery motions and all such other matters as may arise as this matter progresses and which this Court deems appropriate for referral." The parties were directed to submit a list of all outstanding motions and issues to Mr. Bastien on or before June 15, 2004.

Thereafter, on June 9, 2004, counsel on behalf of the petitioners wrote a letter to Mr. Bastien asking him and the partners of his law firm to voluntarily disqualify themselves as special masters in this case. Petitioners' counsel indicated in the letter that he believed there was a conflict of interest because Mr. Bastien's practice and that of his firm primarily consists of insurance defense work.[2] Upon receipt of the letter, the special masters forwarded it to Judge Zakaib stating that they intended to "proceed in accord with this Court's Order unless otherwise directed."

Subsequently, on June 14, 2004, the petitioners filed a Motion to Disqualify the Special Masters. The petitioners argued that the special masters were held to the same requirement of impartiality and independence as judges and that they had a conflict of interest in this case. The special masters responded with an affidavit from Sherri Goodman, Esquire, who had been retained by them to provide advice on whether they should disqualify themselves pursuant to the West Virginia Code of Judicial Conduct. Ms. Goodman opined that the special masters were functioning as "pro tempore part-time judges" and, as a result, were subject to parts of the West Virginia Code of Judicial Conduct. Ms. Goodman's affidavit also disclosed that Bastien & Lacy had been hired by St. Paul to represent two of its insureds and that the representation was current and ongoing. Ms. Goodman indicated that St. Paul was not Mr. Bastien's client, but conceded that St. Paul was paying the firm's fees. Ms. Goodman stated that based on her advice, the firm agreed to terminate its representation of St. Paul's insureds. The withdrawal of representation of the St. Paul insureds was not yet completed at the time the affidavit was executed. Ms. Goodman concluded that there was no reason for Mr. Bastien and his partners to withdraw as special masters in this case. No other written responses or opposition to the Motion to Disqualify were submitted by any party.

A hearing on the motion was held on June 22, 2004. Following oral argument, Judge Zakaib denied the motion. The petitioners then filed this petition for a writ of prohibition on July 1, 2004.

## II.

### STANDARD FOR GRANTING A WRIT OF PROHIBITION

▬ It is well-established that "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legiti-

---

of "tail coverage" free of charge so long as certain conditions were satisfied. "Tail coverage" provides insurance protection for late-filed claims. In other words, it would have provided insurance coverage to the plaintiffs for claims brought years later for medical care that was provided during the insurance policy's terms. The plaintiffs alleged in their complaint that after their insurance policies were not renewed (because St. Paul exited the medical malpractice business in 2001), their promises of free tail coverage went unfulfilled.

**2.** Mr. Bastien has indicated that his firm's practice consists of both plaintiff and defense cases.

mate powers and may not be used as a substitute for [a petition for appeal] or certiorari." Syllabus Point 1, *Crawford v. Taylor,* 138 W.Va. 207, 75 S.E.2d 370 (1953).

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996). With these standards in mind, we now consider whether a writ of prohibition should be issued.

### III.

### DISCUSSION

■ The petitioners contend that the trial court clearly erred by not applying the Code of Judicial Conduct and granting their Motion to Disqualify the Special Masters. As set forth below, we, like the petitioners, believe that the Code of Judicial Conduct applies to special masters. However, we are reluctant to interfere with the discretion of the trial court and make a ruling with regard to whether or not the special masters are disqualified in this case. Instead, we believe

the trial court should reconsider the petitioners' motion to disqualify the special masters in light of the provisions of the Code of Judicial Conduct discussed herein.

■ Contrary to the trial court's finding, the conduct of special masters is clearly governed by the Code of Judicial Conduct. This Court has stated that "when the language of a canon under the *Judicial Code of Ethics*[3] is clear and unambiguous, the plain meaning of the canon is to be accepted and followed without resorting to interpretation or construction." *In the Matter of Karr,* 182 W.Va. 221, 224, 387 S.E.2d 126, 129 (1989) (footnote added). Canon 6A of the Code of Judicial Conduct provides, in pertinent part:

Anyone, whether or not a lawyer, who is an officer of a judicial system and who performs judicial functions, including but not limited to Justices of the Supreme Court of Appeals, Circuit Judges, Family Law Masters, Magistrates, Mental Hygiene Commissioners, Juvenile Referees, Special Commissioners and **Special Masters**, is a judge within the meaning of the Code. All judges shall comply with this Code except as provided below.

(Emphasis added). With regard to the noted exceptions, Canon 6E states that:

A pro tempore part-time judge:

(1) is not required to comply

(a) except while serving as a judge, with Sections 2A, 2B, 3B(9), and 4C(1);

(b) at any time with Sections 2C, 4C(3)(a), 4C(3)(b), 4D(1)(b), 4D(3), 4D(4), 4D(5), 4E, 4F, 4G, 4H, 5A(1), 5A(2), 5B(2), and 5D.

The Code of Judicial Conduct defines "pro tempore part-time judge" as "a judge who serves or expects to serve once or only sporadically on a part-time basis under a separate appointment for each period of service or for each case heard." Clearly, a special master fits within this definition. Accordingly, we now hold that anyone appointed as a special master is a pro-tempore part-time judge and must comply with the Code of Judicial Conduct as set forth in Canon 6.

---

**3.** The Judicial Code of Ethics was replaced by the Code of Judicial Conduct.

**614**

■ In their petition, the petitioners have presented several reasons as to why Mr. Bastien and his partners are disqualified from serving as special masters in this case. However, we believe the fact that they were representing two of St. Paul's insureds at the time of their appointment is of particular significance. Canon 3 of the Code of Judicial Conduct requires special masters to perform their duties diligently and impartially. Moreover, Canon 3E(1) provides that, "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned[.]"[4]

In *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 108, 459 S.E.2d 374, 385 (1995), this Court explained that:

> To protect against the appearance of impropriety, courts in this country consistently hold that a judge should disqualify himself or herself from any proceeding in which his or her impartiality might reasonably be questioned . . . we have repeatedly held that where " 'the circumstances offer a *possible* temptation to the average . . . [person] as a judge not to hold the balance nice, clear and true' " between the parties, a judge should be recused. (citation omitted) (emphasis added). Syl. pt. 3, in part, *State ex rel. Brown v. Dietrick*, 191 W.Va. 169, 444 S.E.2d 47 (1994) . . . In *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860–61, 108 S.Ct. 2194, 2203, 100 L.Ed.2d 855, 872–73 (1988), the United States Supreme Court described the standard for recusal as whether a reasonable and objective person knowing all the facts would harbor doubts concerning the judge's impartiality. The Supreme Court stated: " 'The goal is to avoid even the appearance of partiality.' " *Liljeberg*, 486 U.S. at 860, 108 S.Ct. at 2203, 100 L.Ed.2d at 872. (Citation omitted). To be clear, avoiding the appearance of impropriety is

as important in developing public confidence in our judicial system as avoiding impropriety itself.

(Footnote omitted). As discussed above, Bastien & Lacy was being paid by St. Paul, one of the defendants herein, to represent two of its insureds at the time Mr. Bastien, Mr. Lacy, and Ms. Dirks were appointed as special masters in this case.[5] This Court is certainly mindful of the fact that Bastien & Lacy withdrew from representing the St. Paul insureds once the petitioners filed the motion to disqualify them as special masters. However, the fact remains that they were representing the St. Paul insureds at the time of their appointment.

■ While it appears that the petitioners have very strong and compelling arguments that Mr. Bastien, Mr. Lacy, and Ms. Dirks should be disqualified as special masters in this case to avoid the appearance of impropriety, we are hesitant to make such a ruling at the appellate level. Trial courts have broad discretion in determining whether a special master is needed in any given case and if so, who should serve in that capacity. We generally accord deference to the trial court's decisions in that regard and are reluctant to interfere with the court's exercise of its discretion. Consequently, we believe the trial court should be permitted to reconsider the petitioners' motion to disqualify the special masters in light of the Code of Judicial Conduct.

■ Accordingly, the trial court is hereby directed to hold a hearing within thirty days for the purpose of reconsidering the petitioners' motion to disqualify the special masters. Contrary to the trial court's previous finding, we do not believe that Rule 17 of the West Virginia Trial Court Rules is applicable in this instance.[6] "West Virginia Trial Court

---

**4.** We note that a special master must always comply with Canon 3E as it is not one of the excepted provisions listed in Canon 6E.

**5.** Bastien & Lacy had been retained by St. Paul to represent Hometown Real Estate, Inc. and Janice Osborne who are insureds under a real estate errors and omissions policy of insurance issued by a St. Paul company. The insureds were defendants in a lawsuit pending in the Circuit Court of Logan County at the time the

special masters were appointed in this case. Bastien & Lacy did not disclose its representation of the St. Paul insureds until after the petitioners filed their motion to disqualify.

**6.** During the June 22, 2004 hearing, the trial court indicated that the petitioners had failed to comply with Trial Court Rule 17 in filing their motion to disqualify the special masters.

Rule 17, titled 'Disqualification and Temporary Assignment of Judges,' governs the disqualification of circuit judges." *State ex rel. E.I. Dupont De Nemours and Co. v. Hill,* 214 W.Va. 760, 770, 591 S.E.2d 318, 328 (2003).

## IV.

## CONCLUSION

Thus, for the reasons set forth above, the writ requested by the petitioners is granted as moulded.

Writ granted as moulded.

Justice ALBRIGHT, deeming himself disqualified, did not participate in the decision in this case.

Judge SWOPE, sitting by special assignment.

Justices STARCHER and McGRAW dissent and file dissenting opinions.

McGRAW, Justice, dissenting:

(Filed Dec. 2, 2004)

This is the most blatant case of the fox guarding the hen house I have ever seen. While the majority opinion correctly states that a special master is a pro-tempore part-time judge who must comply with Code of Judicial conduct, it then suffers a severe bout of myopia. After seemingly agreeing that foxes should not guard hen houses, the majority then fails to recognize the fox right in front of us.

The special masters in this case are all from an insurance defense firm that has multiple, longstanding ties to the insurance industry as a whole, as well as specific ties to defendant St. Paul. According to the petitioners, Bastien & Lacy lists a total of 13 representative clients in Martindale–Hubble, and 11 of those are insurance companies or related business. Petitioners point out that Bastien & Lacy is a major sponsor of an insurance trade group, the Professional Independent Insurance Agents of West Virginia, which has the espoused purpose of being "an unrelenting advocate for independent insurance agents." For example, the firm sponsored the group's golf tournament in 2001.

To put it in layman's terms, the insurance industry pays the bills for Bastien & Lacy. The attorneys' Mercedes payments, country club memberships, and indeed, even their golf partners, all come straight from the insurance industry. Of course there is nothing wrong with this, standing alone. While the attorneys who practice there are no doubt honorable people who will do their best to be fair and impartial, the law requires more. The law requires not only that they *be* impartial, but that the public at large *believe* them to be impartial. As the majority quotes from *Tennant:*

> To protect against *the appearance* of impropriety, courts in this country consistently hold that a judge should disqualify himself or herself from any proceeding in which his or her impartiality might reasonably be questioned. Again, we have repeatedly held that where "'the circumstances offer a possible temptation to the average ... [person] as a judge not to hold the balance nice, clear and true'" between the parties, a judge should be recused. (citation omitted) (emphasis added). Syl. pt. 3, in part, *State ex rel. Brown v. Dietrick,* 191 W.Va. 169, 444 S.E.2d 47 (1994). (Emphasis added; citation omitted). *See also State v. Hodges,* 172 W.Va. 322, 305 S.E.2d 278 (1983); *Louk v. Haynes,* 159 W.Va. 482, 223 S.E.2d 780 (1976).

*Tennant v. Marion Health Care Foundation, Inc.,* 194 W.Va. 97, 108, 459 S.E.2d 374, 385 (1995) (emphasis added). Applying this logic to the instant case—the average person would see Bastien & Lacy as intimately involved with the insurance industry as a whole, and with St. Paul in particular. Most people would agree that, if it looks like a fox, gets paid by a fox, and plays golf with a fox—it shouldn't be guarding the chickens.

As the Court concluded in *Tennant:* "To be clear, avoiding the appearance of impropriety is as important in developing public confidence in our judicial system as avoiding impropriety itself." *Id.* It is my fervent hope that the experienced and able circuit judge in this case, now that he can see the issues for what they are, will be able to separate the foxes from the chickens.

Accordingly, I must respectfully dissent.

**616**

STARCHER, J., dissenting:

(Filed Dec. 23, 2004)

I wholeheartedly agree with the majority opinion's holding that a special master must comply with the *Code of Judicial Conduct.* But I feel compelled to dissent to express my dissatisfaction with the outcome of this case.

The attorneys that the circuit judge chose to employ as special masters in this case had a tight, attorney-client relationship with the primary defendant, St. Paul Fire and Marine Insurance Company, both before and during the petitioners' lawsuit. There is simply no way that a person could get a paycheck from a client one day as a lawyer, and the next day be expected to act as a fair and impartial judge in a case where that very same client is a litigant. I do not say this to impugn the integrity of the lawyers in the instant case, but there is no sidestepping the fact that there is a strong appearance of impropriety at work. The lawyers should have had the courage to see this, abided by the spirit of the *Code of Judicial Conduct,* and stepped aside a long time ago.

What compels me to dissent is this: the majority opinion's command to send this case back to the circuit court for further proceedings to reconsider the petitioners' motion to disqualify the special masters is, in my mind, a formal legal exercise that borders on the absurd. It is downright wasteful of the litigants' and taxpayers' money to force the judge to hold more hearings to answer a question with an obvious answer. I would have granted the writ of prohibition outright because the lawyers chosen by the circuit court plainly should have been disqualified from acting as special masters.

I therefore respectfully dissent.