640 S.E.2d 243

**STATE of West Virginia ex rel. R.E. HAMRICK, Jr., M.D., Petitioner**

**v.**

**The Honorable James C. STUCKY, Judge of the Circuit Court of Kanawha County, Charleston Area Medical Center, a West Virginia Corporation, David Ramsey, Individually and in His Capacity as President and CEO of CAMC, Glenn Crotty, M.D., Individually and in His Capacity as Chief Operating Officer of CAMC, Elizabeth L. Spangler, M.D., Individually and in Her Capacity as Vice President of Medical Affairs at CAMC, and Franklin S. Fragale, Jr., Discovery Commissioner, Respondents.**

No. 33195.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 14, 2006.

Decided Nov. 30, 2006.

Dissenting Opinion of Justice Starcher Dec. 13, 2006.

Concurring and Dissenting Opinion of Justice Benjamin Dec. 14, 2006.

---

**2.** *See* note 1, *supra*.

Karen H. Miller, Richard W. Walters, Miller, Weiler & Walters, Charleston, WV, for Petitioner.

K. Paul Davis, Spilman, Thomas & Battle, PLLC, Charleston, WV, for Charleston Area Medical Center.

James W. Cagle, Jr., Charleston, WV, for Glenn Crotty, M.D.

Benjamin L. Bailey, Bailey & Glasser, Charleston, WV, for Elizabeth Spangler, M.D.

Jeffrey M. Wakefield, Flaherty, Sensabaugh & Bonasso, PLLC, Charleston, WV, for David Ramsey, CEO of CAMC.

William J. Charnock, Kanawha County Prosecuting Attorney, Charleston, WV, for The Honorable James C. Stucky.

Franklin S. Fragale, Jr., discovery commissioner, Charleston, WV.

MAYNARD, Justice:

This case is before this Court upon a petition for a writ of prohibition filed by the petitioner, Dr. R.E. Hamrick, Jr., against the respondents, the Honorable James C. Stucky, Judge of the Circuit Court of Kanawha County; David Ramsey, individually and in his capacity as President and CEO of Charleston Area Medical Center (CAMC); Glenn Crotty, M.D., individually and in his capacity as Chief Operating Officer of CAMC; Elizabeth L. Spangler, M.D., individually and in her capacity as Vice President of Medical Affairs at CAMC; and Franklin S. Fragale, Jr., discovery commissioner.

The petitioner seeks to prohibit Franklin S. Fragale, Jr., from serving as the discovery commissioner in his underlying case against CAMC arising out of the revocation of his privileges at the hospital. The petitioner contends that Mr. Fragale has a personal bias against him and his attorney and therefore, the circuit court should have granted his motion to recuse Mr. Fragale. Based upon the parties' briefs and arguments in this proceeding as well as the pertinent authorities, the writ is hereby granted.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The petitioner, R.E. Hamrick, Jr., M.D., petitions this Court for a writ of prohibition.

He submits that the lower court abused its discretion when it denied his motion to recuse a newly appointed discovery commissioner in his case against CAMC wherein he alleges that on September 10, 2004, CAMC improperly revoked his medical privileges.

After the revocation, this Court reinstated Dr. Hamrick's privileges on September 16, 2004, through a preliminary injunction and allowed him to continue to care for his patients at CAMC. The matter was then remanded to the circuit court for development of the underlying case. Since that time, Dr. Hamrick has been allowed to treat his patients through this Court's standing order in *R.E. Hamrick, Jr., M.D. v. CAMC et. al.*, No. 04–099. During a hearing held on July 18, 2006, the circuit court advised the parties that it would be appointing a special commissioner to make recommendations on outstanding discovery issues. The circuit court advised the parties that if they objected to the appointed commissioner they could file a motion to recuse with the court. The circuit court then appointed Franklin S. Fragale, Jr., as the discovery commissioner.

Upon notification of the appointment, on July 19, 2006, Dr. Hamrick filed a motion to recuse Mr. Fragale from acting as the discovery commissioner. That same day, the circuit judge sent a letter to Dr. Hamrick stating: "If you desire me to consider your motion, you need to submit specific detailed grounds for your motion." Thereafter, on July 24, 2006, Dr. Hamrick filed his amended motion to recuse.

In the amended motion, Dr. Hamrick detailed conduct engaged in by Mr. Fragale that he believed established a conflict with his appointment as discovery commissioner. Dr. Hamrick explained to the circuit court that during a previous trial in August of 2000, wherein Mr. Fragale was opposing counsel to Dr. Hamrick's current counsel, Karen Miller, that Mr. Fragale repeatedly made derogatory and discriminatory comments about Ms. Miller. Specifically, Dr. Hamrick declared that a former client of Ms. Miller said Mr. Fragale referred to Ms. Miller by using vulgar and offensive terms during the course of that trial.

Dr. Hamrick further argued in his motion for recusal that years earlier, in an unrelated matter to the case at hand, Mr. Fragale confronted him in a public setting at the Nautilus and asked him for the name of his malpractice insurance carrier stating that he was going to sue him. Dr. Hamrick maintains that Mr. Fragale's threat to sue him personally, along with his vicious personal attacks against his counsel, show a clear bias against him and his counsel. He further argues that under the West Virginia Code of Judicial Conduct, Canon 3E(1)(a), that Mr. Fragale had an affirmative duty to disqualify himself since he "has a personal bias or prejudice concerning a party or a party's lawyer[.]"

On August 10, 2006, the circuit court upheld the appointment of Mr. Fragale and ruled that "a hearing is not necessary in order for the court to make a decision in this matter and good cause or other justification does not exist to grant said motion." In light of the circuit court's ruling, Dr. Hamrick withdrew all outstanding discovery requests and agreed not to file any motion to compel any outstanding discovery. Despite the withdrawal, Mr. Fragale held a hearing on the relevancy of the withdrawn requests. He then issued a twenty-seven page recommendation to the circuit court concluding that none of Dr. Hamrick's requests was relevant. Thereafter, on September 22, 2006, Dr. Hamrick filed a writ of prohibition with this Court seeking the removal of Mr. Fragale as discovery commissioner. On September 26, 2006, this Court issued a rule to show cause.

## II.

### STANDARD FOR ISSUING A WRIT

 A writ of "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syllabus Point 1,*Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953). In order to determine whether the writ of prohibition should be granted, we apply the following standard of review:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

## III.

### DISCUSSION

Dr. Hamrick argues that the personal nature of the confrontations by Mr. Fragale against both Dr. Hamrick and his legal counsel, Ms. Miller, show a clear bias. He believes that the circuit court erred by not applying the Code of Judicial Conduct and granting the motion to recuse Mr. Fragale as the discovery commissioner.

Conversely, the respondents in this case disagree and believe that Mr. Fragale should be able to continue as the discovery commissioner in the underlying case. In that regard, CAMC maintains that the circuit court's ruling, which denied Dr. Hamrick's motion to disqualify Mr. Fragale, was reasonable. Specifically, CAMC declares that Dr. Hamrick's motion was based upon unverified triple hearsay consisting of relatively

insignificant and ancient allegations. CAMC further argues that this is not an "extraordinary" instance where this Court should intervene since Mr. Fragale denies all of the allegations of wrongdoing and demonstrated his ability to remain unbiased by completing his thorough and well-reasoned analysis to each of the issues before him in his recommendations to the circuit court.

Mr. Fragale himself states that he should not be removed as discovery commissioner. He maintains that he has never used either of the words he is accused of using against Ms. Miller or any individual during the thirty-one years he has been engaged in the practice of law. Mr. Fragale further states that his conversation with Dr. Hamrick years earlier at the Nautilus was a very brief, private, and professional discussion about an individual who had consulted with him concerning a potential medical negligence claim. He categorically denies either that his conversation constituted a verbal confrontation or in any way was done to embarrass Dr. Hamrick. In fact, Mr. Fragale explains that as a result of his discussion with Dr. Hamrick, he investigated the circumstances surrounding the alleged medical negligence and determined that the case lacked merit. He then told his client that he would not pursue the claim and that it was his professional opinion that no medical negligence occurred. Mr. Fragale believes that Dr. Hamrick has not established facts sufficient to warrant his disqualification.

Dr. Crotty reiterates the arguments of the other respondents and contends that Dr. Hamrick was complaining about recommended rulings concerning discovery which had not yet been dealt with by the circuit court. Likewise, Dr. Spangler believes that the writ of prohibition should be denied because Dr. Hamrick has provided no valid legal grounds for the relief he has requested. Dr. Spangler also states that Dr. Hamrick's petition results in an unfair and unwarranted attack on the character of Mr. Fragale. Finally, Dr. Ramsey argues that the circuit court correctly denied Dr. Hamrick's motion for recusal because it was based on hearsay and conjecture and failed to comply with the procedural requirements set forth for raising his motion under Rule 17.01 of the West Virginia Trial Court Rules. He claims that Dr. Hamrick was in violation of Rule 17.01 since he neglected to file a verified certificate along with his motion to recuse.

■ Before we address Dr. Hamrick's argument with regard to his allegations of bias on the part of Mr. Fragale, we are able to quickly dispose of Dr. Ramsey's assertion with regard to Rule 17 and its impact on this case. In *Mantz v. Zakaib*, 216 W.Va. 609, 609 S.E.2d 870 (2004), under similar circumstances, we held that Rule 17 of the West Virginia Trial Court Rules was not applicable in that petitioner's request for recusal of a special master. We reiterated our earlier holding in *State ex rel. E.I. Dupont De Nemours and Co. v. Hill*, 214 W.Va. 760, 770, 591 S.E.2d 318, 328 (2003) wherein we held: "West Virginia Trial Court Rule 17, titled 'Disqualification and Temporary Assignment of Judges,' governs the disqualification of circuit judges."

■ With regard to Dr. Hamrick's argument that Mr. Fragale should have been disqualified as discovery commissioner, we first will examine our long-standing law with regard to issuing a writ of prohibition. In *State ex rel. Noll v. Dailey*, 72 W.Va. 520, 523, 79 S.E. 668, 669–670 (1913), this Court held:

Where the court, although having jurisdiction of the cause, during the trial of it, exceeds its powers in some matter pertaining thereto, for which there is no adequate remedy by the ordinary course of proceeding, the writ of prohibition lies, under the general principles of law. . . .

This Court has also held that:

Where prohibition is sought to restrain a trial court from the abuse of its legitimate powers, rather than to challenge its jurisdiction, the appellate court will review each case on its own particular facts to determine whether a remedy by appeal is both available and adequate, and only if the appellate court determines that the abuse of powers is so flagrant and violative of petitioner's rights as to make a remedy by appeal inadequate, will a writ of prohibition issue.

Syllabus Point 2, *Woodall v. Laurita*, 156 W.Va. 707, 195 S.E.2d 717 (1973).

■ Additionally, " '[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W.Va.Code, 53–1–1.' Syllabus Point 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977)." Syllabus Point 1, *State ex rel. Sims v. Perry*, 204 W.Va. 625, 515 S.E.2d 582 (1999). Likewise, a writ of prohibition is an appropriate remedy in cases where the lower court has no "jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." W.Va.Code § 53–1–1 (1923). In the instant matter, the circuit court has jurisdiction, therefore we look to Syllabus Point 1 of *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979):

> In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

Further, in Syllabus Point 2 of *State ex rel. State Road Commission v. Taylor*, 151 W.Va. 535, 153 S.E.2d 531 (1967), this Court provided: "Although a court has jurisdiction of the subject matter in controversy and of the parties, if it clearly appears that in the conduct of the case it has exceeded its legitimate powers with respect to some pertinent question a writ of prohibition will lie to prevent such abuse of power."

■ With those principles in mind, we note that this Court has held that discovery commissioners are subject to the Code of Judicial Conduct. In Syllabus Point 3 of *Mantz, supra*, we held that: "Anyone appointed as a special master is a pro-tempore part-time judge and must comply with the Code of Judicial Conduct as set forth in Canon 6." Moreover, Canon 3 of the Code of Judicial Conduct requires special masters to perform their duties diligently and impartially. Further, Canon 3E(1) provides that, "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned[.]"

Similarly, West Virginia Code of Judicial Conduct, Canon 3E(1)(a) states that a discovery commissioner has an affirmative duty to disqualify himself when the commissioner "has a personal bias or prejudice concerning a party or a party's lawyer[.]" In *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 108, 459 S.E.2d 374, 385 (1995), this Court explained that:

> To protect against the appearance of impropriety, courts in this country consistently hold that a judge should disqualify himself or herself from any proceeding in which his or her impartiality might reasonably be questioned ... we have repeatedly held that where " 'the circumstances offer a possible temptation to the average ... [person] as a judge not to hold the balance nice, clear and true' " between the parties, a judge should be recused. (citation omitted) (emphasis added). Syl. pt. 3, in part, *State ex rel. Brown v. Dietrick*, 191 W.Va. 169, 444 S.E.2d 47 (1994) ... In *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860–61, 108 S.Ct. 2194, 2203, 100 L.Ed.2d 855, 872–73 (1988), the United States Supreme Court described the standard for recusal as whether a reasonable and objective person knowing all the facts would harbor doubts concerning the judge's impartiality. The Supreme Court stated: " 'The goal is to avoid even the appearance of partiality.' " *Liljeberg*, 486 U.S. at 860, 108 S.Ct. at 2203, 100 L.Ed.2d at 872. (Citation omitted). To be clear, avoiding the appearance of impropriety is as important in developing public confidence in our judicial system as avoiding impropriety itself.

(Footnote omitted).

■ After fully reviewing the parties' arguments, we believe that given the circum-

stances surrounding the underlying case between the parties, the circuit court should have disqualified Mr. Fragale. Upon learning of Mr. Fragale's appointment as discovery commissioner, on July 19, 2006, Dr. Hamrick promptly filed his motion to recuse. At that time, Dr. Hamrick, through counsel, advised the circuit court that he was hesitant to place the specific objections in his motion to recuse due to the inflammatory and salacious nature of the objections. The circuit court then sent a letter to Dr. Hamrick's counsel asking for the additional details as to the basis of the requested recusal. On July 24, 2006, Dr. Hamrick filed his amended motion for recusal wherein he detailed the alleged conduct of Mr. Fragale against him and against his counsel Ms. Miller.

Having reviewed the allegations against Mr. Fragale, we believe that at a minimum they demonstrate specific conflicts between the parties which have resulted in turmoil and considerable discord. If the allegations against Mr. Fragale are accurate, we believe that such conduct would have necessarily affected the outcome of the underlying case. Nonetheless, in spite of the very serious allegations set forth by Dr. Hamrick against Mr. Fragale, on August 10, 2006, the circuit court ruled that "a hearing [was] not necessary in order for the Court to make a decision in this matter and good cause or other justification does not exist to grant said motion."

We believe that a hearing should have been held in this matter to thoroughly investigate the allegations against Mr. Fragale. Since that did not happen, we are left without an adequate record with which to sufficiently explore those allegations. Moreover, given the sensitive nature of the allegations against Mr. Fragale combined with the myriad filings against him in the circuit court as well as before this Court, regardless of the veracity of those claims, we believe that in order to avoid the appearance of impropriety in the underlying case, the appropriate action should be the removal of Mr. Fragale as discovery commissioner. Upon removal of Mr. Fragale, the circuit court should immediately appoint a new discovery commissioner so that the underlying legal action may proceed promptly in order that all parties re-

ceive a fair and equitable hearing before an unbiased discovery commissioner.

According to the West Virginia State Bar, there are nearly 1,700 active lawyers in Kanawha County. It certainly should have been possible for the circuit court to have found one discovery commissioner who did not have a prior conflict or a quarrel with the parties involved in this litigation. It seems to us that it would have been an easy solution to have simply substituted another lawyer in this case to act as the discovery commissioner. At a minimum, as we have discussed, the circuit court should have conducted a hearing to test the veracity of the allegations set forth by Dr. Hamrick.

■ There simply has to be some manner in which parties to litigation are able to test the truth of such allegations and to introduce witnesses during an evidentiary hearing when a situation arises such as the one before us today. There is no question that the underlying allegations asserted outrageous conduct and we are at a loss to understand why the circuit court did not explore them further. We therefore hold that whenever a discovery commissioner is appointed by a circuit court, and there is a timely objection to that appointee, the trial court has a duty to hold an evidentiary hearing to determine the legitimacy of the objection.

In summary, we believe that it is in the best interests of all of the parties involved in the underlying legal action that in order to "avoid even the appearance of partiality" that Mr. Fragale be removed from the case as discovery commissioner. *See Mantz*, 216 W.Va. at 614, 609 S.E.2d at 875 (citations omitted). Consequently, we instruct the Circuit Court of Kanawha County to enter an order disqualifying Mr. Fragale from acting as discovery commissioner in this matter and direct the circuit court to immediately thereafter appoint a new commissioner.

## IV.

### CONCLUSION

Based upon the foregoing, we grant Dr. Hamrick's request for a writ of prohibition.

Writ Granted.

STARCHER, J., dissenting:

(Filed December 13, 2006)

I dissent from the majority opinion, not because I disagree with everything in the opinion, but because I think that this is a classic example of how *this* Court should not be micro-managing the procedural operations of our circuit courts.

The respondent, the Hon. James C. Stucky, is quite competent to manage procedural conflicts in his court and to referee contentious lawyers. I would not interfere with or second guess his methodology in doing so.

Respectfully, I therefore dissent to this Court's interference in the procedural aspects of this litigation.

BENJAMIN, Justice, concurring, in part, and dissenting, in part:

(Filed December 14, 2006)

In its opinion, the majority does something very good. It develops a new syllabus point which will serve as a valuable procedural guide for circuit courts and litigants in future discovery-related disputes at the trial level. I cannot, however, agree with the majority's decision to then disregard this very principle of fair procedure and arbitrarily remove the circuit court's choice for discovery commissioner without *any* opportunity for the litigants to prove and dispute the allegations against the fairness of the discovery commissioner and the opportunity of the discovery commissioner to respond to any personal accusations made against him. I earnestly encourage the majority to reconsider that portion of its decision which avoids an evidentiary hearing below.

In setting forth Syllabus Point 6, requiring that an evidentiary hearing be held to determine the legitimacy of an objection to a discovery commissioner appointed by a circuit court, this Court properly protects both the discretion of trial court judges and the rights of litigants. Discovery commissioners provide not only the litigants, but also the trial court, with a valuable resource in complex litigation. It is important that the circuit court have in a discovery commissioner someone it can trust and rely upon. It is equally important for the litigants that the discovery commissioner be both fair and knowledgeable in the finer aspects of discovery. I concur with the majority in the establishment of this mechanism as necessary and proper where one party has a bona fide objection to the circuit court's selection of a discovery commissioner.

Had the majority stopped there, it could have rightly patted itself on the back for resolving the issue raised by this petition seeking extraordinary relief and of stopping short of exceeding the proper role of an appellate body in reviewing discretionary discovery decisions on such petitions. Unfortunately, the majority did not restrain itself from short-circuiting appropriate process and instead usurped a discretionary decision regarding discovery and trial procedure properly left to the circuit court.

"Do what I say. Don't do what I do!" is perhaps the best way to describe the majority's speculative plunge into the discovery management matters of this litigation. Despite ruling that an evidentiary hearing is the necessary mechanism to properly test the legitimacy of a litigant's objections to an appointed discovery commissioner, the majority arbitrarily disregards its own ruling and, in so doing, removes the circuit court's choice of discovery commissioner *without any required evidentiary hearing whatsoever* and *without any proof of Petitioner's allegations.* The Petitioner's allegations of potential and actual bias by the discovery commissioner may be legitimate. And then again, they may not be. Instead of permitting the circuit court to make the proper evidentiary findings to determine whether the Petitioner's allegations of bias may be legitimate, the majority instead simply accepts as true the unsubstantiated claims and allegations of the Petitioner.

Discovery has increasingly become a "tool" of opportunity in the strategy arsenal of many of today's litigators. Purposeful delaying, oppressive requests, unwarranted "fishing expeditions", boiler plate objections, and myriad other "tools" are too often today the means by which one side or another to a case seeks an advantage. As a Court, we must encourage trial judges to manage discovery

in cases before them fairly and to sanction those who would misuse the discovery system. That includes affirming the choices a trial court makes regarding a discovery commissioner absent an abuse of discretion. The trial court knows the finer aspects of the parties and the case herein far better than this Court ever could. This is especially so when the matter is before us on the limited record of a petition seeking extraordinary relief. It is that trial judge who knows best who should be a discovery commissioner absent an objective basis for bias by the discovery commissioner or other proper cause.

I am further concerned that the Court's willingness to factually venture into trial discovery issues such as this will simply encourage the use by parties of petitions seeking writs for extraordinary relief during the pendency of pretrial matters to avoid adverse, or possibly adverse, trial court discovery rulings. Indeed, the inappropriate resort to petitions seeking extraordinary relief may serve no purpose other than delay. While such resort to extraordinary relief may be unavoidable in situations involving claims of privilege, work product, and so on, I do not believe that a trial court's appointing of a discovery commissioner whose recommendations are subject to trial court review (and, later, appellate court review) rises to the level of imminent prejudice to a party justifying the extraordinary power of a writ of prohibition—particularly where, as here, the only allegations of bias are completely unsubstantiated.

Finally, I am concerned about the majority's decision on this discovery commissioner, a member of the West Virginia Bar. Of course, the majority did not "find" bias; but,

it may as well have done so. By ruling that a new discovery commissioner must be appointed, the majority unfairly and improperly brings into question the professionalism of the current discovery commissioner where the record simply does not objectively support any such negative inference. We owe the current discovery commissioner much more consideration than that which I believe he has been shown by the majority in its opinion. We owe him at least the voice which an evidentiary hearing provides.

One might justly question why the Petitioner herein waited to make allegations against the discovery commissioner, and then only in vague terms. Petitioner may have hoped to avoid confrontation or embarrassment. We don't know who is right and who is wrong.[1] Absent a hearing, the discovery commissioner is defenseless to the claims of the Petitioner. At this point, however, my review of the limited record before us on this petition provides absolutely no objective basis whatsoever to support the majority's removal of this discovery commissioner on the basis of alleged bias; no basis in the discovery recommendations to date to support a finding of bias; and no other basis for an assertion of impropriety involving this discovery commissioner. In the absence of an evidentiary hearing, I respectfully dissent from the remainder of the majority's decision.

---

1. It goes without saying that someone is wrong. If the allegations are correct, the discovery commissioner, as a member of the Bar, had a duty to disclose such potential bias. If not, then a proper question needs to be raised regarding the good faith basis for the allegations being raised.